IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
UNITED PUBLIC WORKERS, AMERICAN )    Civil No. 15-00303 HG-KSC
FEDERATION OF STATE, COUNTY,    )
MUNICIPAL EMPLOYEES, LOCAL 646, )
AFL-CIO,                        )
                                )
              Plaintiff,        )
                                )
                                )
vs.                             )
                                )
                                )
DAVID Y. IGE, in his capacity   )
as Governor of the State of     )
Hawaii,                         )
                                )
              Defendant.        )
_____  )
```

**ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
(ECF No. 30)**

**and**

**GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
(ECF No. 27)**

**and**

**DISMISSING PLAINTIFF'S COMPLAINT (ECF No. 1) WITH PREJUDICE**

On June 10, 2015, the Defendant Governor of the State of

Hawaii, David Y. Ige, signed Act 103 into law.[1]  Act 103 directs

the Governor to effectuate the transfer of the management and

operation of Maui Memorial Medical Center, Kula Hospital and

_____

[1] Act 103 (2015), previously House Bill 1075, has been
codified as Haw. Rev. Stat. §§ 89-8.5, 323F-51—60.

1

Clinic, and Lanai Community Hospital to a private entity.  The three facilities are currently operated by the Maui Regional System of the Hawaii Health Systems Corporation, an agency of the State of Hawaii.

Plaintiff, a union representing approximately 1,500 employees of the Hawaii Health Systems Corporation, has filed a lawsuit to enjoin the Governor from implementing Act 103. Plaintiff claims that Act 103 violates the Contract Clause of the United States Constitution.  Plaintiff argues Act 103 interferes with two Collective Bargaining Agreements entered into between the State of Hawaii and certain employees of the Hawaii Health Systems Corporation on Maui.  Plaintiff asserts that the Collective Bargaining Agreements remain in effect until June 2017.

The Defendant Governor of the State of Hawaii filed a Motion for Judgment on the Pleadings (ECF No. 27) to dismiss Plaintiff's Complaint on the basis that Plaintiff has failed to state a claim upon which relief may be granted and Plaintiff's suit is barred against him pursuant to the Eleventh Amendment to the United States Constitution.

Plaintiff filed a Motion for a Preliminary Injunction to prevent the Governor from implementing Act 103.  (ECF No. 30).

Plaintiff's Motion for a Preliminary Injunction (ECF No. 30) is **DENIED.**

Defendant's Motion for Judgment on the Pleadings (ECF No. 27) is **GRANTED.**

Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE.**

## PROCEDURAL HISTORY

On August 6, 2015, Plaintiff United Public Workers, American Federation of State, County, Municipal Employees, Local 646, AFL-CIO ("Plaintiff") filed a Complaint against Defendant David Y. Ige, in his capacity as Governor of the State of Hawaii ("Defendant").  (ECF No. 1).

On November 5, 2015, Defendant filed GOVERNOR DAVID IGE'S MOTION FOR JUDGMENT ON THE PLEADINGS.  (ECF No. 27).

On November 9, 2015, Plaintiff filed PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION.  (ECF No. 30).

On November 19, 2015, the Court held a status conference as to the Parties' Motions and set a briefing schedule for both Motions.  (ECF No. 44).

On November 25, 2015, Plaintiff filed an Opposition to Defendant's Motion for Judgment on the Pleadings.  (ECF No. 48).

On December 7, 2015, Defendant filed an Opposition to Plaintiff's Motion for Preliminary Injunction.  (ECF No. 52).

On December 18, 2015, Defendant filed a Reply to Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings.

3

(ECF No. 53).

On December 21, 2015, Plaintiff filed a Reply to Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction. (ECF No. 54).

On January 13, 2016, the Court held a hearing on Plaintiff's Motion for Preliminary Injunction (ECF No. 30) and Defendant's Motion for Judgment on the Pleadings (ECF No. 27). (ECF No. 55).

On January 15, 2016, Plaintiff filed a Motion for Leave to file a Supplemental Memorandum in Support of its Motion for Preliminary Injunction and in Opposition to Defendant's Motion for Judgment on the Pleadings. (ECF No. 56). On the same date, the Court granted Plaintiff's Motion for Leave to File its Supplemental Memorandum. (ECF No. 57).

On January 22, 2016, Defendant filed an Opposition to Plaintiff's Supplemental Memorandum. (ECF No. 59).

Also on January 22, 2016, Defendant filed a Motion for Leave to File Status Report on Compliance with Hawaii Revised Statutes § 323F-57(a). (ECF No. 60).

On January 26, 2016, Defendant filed an Errata to its Motion for Leave to File a Status Report. (ECF No. 61).

On January 27, 2016, the Court issued a Minute Order granting Defendant's Motion for Leave to File a Status Report. (ECF No. 62). On the same date, the Defendant filed its Status Report on Compliance with Hawaii Revised Statutes § 323F-57(a).

4

(ECF No. 63).

On February 1, 2016, Defendant filed GOVERNOR IGE'S TEN DAYS' NOTICE PRIOR TO DELIVERY OF DOCUMENTATION REGARDING REDUCTION-IN-FORCE.  (ECF No. 64).

On February 2, 2016, Plaintiff filed a Motion for Leave to File Status Report Regarding Compliance with Hawaii Revised Statute Section 323F-57(a).  (ECF No. 65).

On February 3, 2016, the Court issued a Minute Order granting Plaintiff's Motion for Leave to file the Status Report and ordered Defendant to file a response.  (ECF No. 66).  On the same date, Plaintiff filed its Status Report.  (ECF No. 67).

On February 8, 2016, Defendant filed its Response to Plaintiff's Status Report Regarding Compliance with Hawaii Revised Statutes Section 323F-57(a).  (ECF No. 70).

On February 9, 2016, the Court held a status conference as to the Parties' status reports.  Following the hearing, the Court rendered a ruling denying Plaintiff's Motion for a Preliminary Injunction and granting Defendant's Motion for Judgment on the Pleadings.  (ECF No. 71).  The Court stated a written order would be filed at a later date.  (Id.)  This written order sets forth the Court's basis for the denial of Plaintiff's Motion for a Preliminary Injunction and the grant of Defendant's Motion for Judgment on the Pleadings.

**BACKGROUND**

**The Plaintiff Union**

Plaintiff is the United Public Workers, American Federation of State, County, Municipal Employees, Local 646, AFL-CIO ("Plaintiff"). Plaintiff is a labor union certified as the exclusive collective bargaining representative for approximately 11,000 public employees in Hawaii. (Complaint at ¶ 8, ECF No. 1). Plaintiff represents approximately 1,500 employees who work for the Hawaii Health Systems Corporation. (Id. at ¶ 18). The Hawaii Health Systems Corporation is a state agency that is responsible for the management of state-owned medical facilities. (Id. at ¶¶ 10, 13-14).

Plaintiff states that the Hawaii Health Systems Corporation employees it represents are members of two "bargaining units": Unit 1 and Unit 10. (Id. at ¶ 18). Bargaining Unit 1 is comprised of non-supervisory blue-collar workers and Bargaining Unit 10 includes supervisory and non-supervisory workers in the institutional, health, and correctional workers unit of the Hawaii Health Systems Corporation. (Id. at ¶ 17).

**The Collective Bargaining Agreements**

Plaintiff alleges that the State of Hawaii and its Hawaii Health Systems Corporation are currently bound by two valid

6

Collective Bargaining Agreements that they entered into with the Union's Bargaining Units 1 and 10 employees. (Complaint at ¶¶ 29-30, ECF No. 1). The two Collective Bargaining Agreements are effective from July 1, 2013 through June 30, 2017. (<u>Id.</u>)

The Collective Bargaining Agreements govern some aspects of the employment relationship between members of Bargaining Units 1 and 10, and the Hawaii Health Systems Corporation. (<u>Id.</u> at ¶ 20). The Collective Bargaining Agreements regulate the terms and conditions of employment including wages, meal and rest periods, hours of work, holidays, sick leave, and fringe benefits. (<u>Id.</u>)

**Act 103**

In 2015, the Hawaii State Legislature adopted House Bill 1075. (Complaint at ¶ 31, ECF No. 1). On June 10, 2015, House Bill 1075 was signed into law by the Defendant Governor of the State of Hawaii, David Y. Ige, as Act 103. (<u>Id.</u>) Act 103 instructs the Defendant Governor to negotiate the transfer of operation and control of the Hawaii Health Systems Corporation's Maui Regional System facilities to a private entity. (<u>Id.</u> at ¶ 32). Act 103 sets forth the terms of the transfer of the Maui Regional System facilities comprised of the Maui Memorial Medical Center, Kula Hospital and Clinic, and Lanai Community Hospital. (<u>Id.</u>)

Plaintiff alleges that the Defendant Governor intends to

implement Act 103 before the Collective Bargaining Agreements expire in June 2017.  Plaintiff argues that the Defendant Governor's proposed implementation of Act 103 violates the Contract Clause of the United States Constitution.  (<u>Id.</u> at ¶¶ 36, 53-57).

## <u>STANDARDS OF REVIEW</u>

**Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed.  Judgment on the pleadings "is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." <u>Fleming v. Pickard</u>, 581 F.3d 922, 925 (9th Cir. 2009).  For a Rule 12(c) motion, all material allegations contained in the nonmoving party's pleadings are accepted as true.  <u>Hal Roach Studios v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1989); <u>Chavez v. United States</u>, 683 F.3d 1102, 1108 (9th Cir. 2012).

The district court's review is generally limited to the contents of the complaint.  The court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the Rule 12(c) motion into a motion for summary judgment.  <u>Lee v.</u>

City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

When a Rule 12(c) motion raises the defense of failure to state a claim, the standard governing the motion is the same as that governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988).  Rule 12(b)(6) allows dismissal where a complaint fails "to state a claim upon which relief can be granted."  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  Conclusory allegations of law and unwarranted inferences are insufficient to defeat such a motion.  Id.  The Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

**Preliminary Injunction**

A preliminary injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  A plaintiff seeking preliminary injunctive relief must establish:

(1)  a likelihood of success on the merits;

(2)  a likelihood of irreparable harm in the absence of the injunctive relief;

9

(3)  that the balance of equities tips in favor of issuing the injunction; and,

(4)  that issuing the injunction is in the public interest. Id. at 20.

The plaintiff bears the burden of making a clear showing on the four elements to demonstrate his entitlement to this extraordinary remedy.  Earth Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010).

## ANALYSIS

There are two motions before the Court.  The first motion is Defendant Governor David Y. Ige's Motion for Judgment on the Pleadings.  Defendant argues that Plaintiff's suit against him in his official capacity as Governor of the State of Hawaii is barred by the Eleventh Amendment to the United States Constitution.  Defendant moves for dismissal of Plaintiff's Complaint on the basis that, even accepting the allegations as true, Plaintiff has not stated a claim upon which relief may be granted.

The second motion is Plaintiff United Public Workers, American Federation of State, County, Municipal Employees, Local 646, AFL-CIO's Motion for a Preliminary Injunction.  Plaintiff's motion seeks to prevent the Defendant Governor from implementing Act 103 until this case can be resolved on the merits.

I.    Subject Matter Jurisdiction

Federal district courts are courts of limited jurisdiction. They have no jurisdiction without specific constitutional or statutory authorization.  Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 552 (2005).  A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction.  Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

Subject matter jurisdiction is conferred on federal courts either through diversity jurisdiction pursuant to 28 U.S.C. § 1332 or through federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Peralta v. Hispanic Bus., Inc., 419 F.3d 1064, 1068 (9th Cir. 2005).

A.    Diversity Jurisdiction

Diversity jurisdiction exists when there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a); Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).

There is no diversity jurisdiction in this case.  Defendant Governor Ige is sued in his official capacity and the State of Hawaii is a real party in interest.  A State is not "a citizen of a State" for purposes of 28 U.S.C. § 1332(a) and a cannot be sued in federal court on the basis of diversity jurisdiction.  Moor v.

11

Cnty. of Alameda, 411 U.S. 693, 717 (1973); Urbino v. Orkin Srvs. of Cal., Inc., 726 F.3d 1118, 1123-24 (9th Cir. 2013) (finding no diversity jurisdiction because the State was a real party in interest in a suit brought by the attorney general).

**B.   Federal Question Jurisdiction**

A plaintiff properly invokes federal question jurisdiction by pleading a colorable claim arising under the Constitution or laws of the United States. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).

Failure to establish federal question jurisdiction under 28 U.S.C. § 1331 is not the same thing as failure to state a claim under federal law. Bollard v. Cal. Province of the Soc. of Jesus, 196 F.3d 940, 951 (9th Cir. 1999); see Arbaugh, 546 U.S. at 516. Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if that claim is later dismissed on the merits. Bollard, 196 F.3d at 951.

The United States Supreme Court has found that the absence of a valid cause of action does not implicate subject matter jurisdiction unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998) (citing Bell v. Hood, 327 U.S. 678, 682-83 (1946)).

12

In this case, Plaintiff asserts three counts in the Complaint invoking federal law.  Plaintiff brings federal law causes of action pursuant to 42 U.S.C. § 1983, the Supremacy Clause of the United States Constitution, and the federal Declaratory Judgment Act.  Each of Plaintiff's causes of action argues that Hawaii State Act 103 (2015) as implemented by the Defendant Governor of the State of Hawaii violates the Contract Clause of the United States Constitution.

## II.  Eleventh Amendment

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.

The Eleventh Amendment to the United States Constitution has been interpreted as a grant of sovereign immunity to the States against suit in federal court.  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).  A State is immune from suits brought in federal court by its own citizens as well as by citizens of another State.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).

The Eleventh Amendment grants the State a legal power to

assert a sovereign immunity defense should it choose to do so. Eleventh Amendment immunity is treated as an affirmative defense that may be waived by the defendant rather than a non-waivable limit on the federal courts' subject matter jurisdiction.  Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997); Tritchler v. Cnty. of Lake, 358 F.3d 1150, 1153-54 (9th Cir. 2004).

The Ninth Circuit Court of Appeals has held that the court must resolve an Eleventh Amendment immunity claim before reaching the merits of the case.  Coalition to Defend Affirmative Action v. Brown, 674 F.3d 1128, 1133 (9th Cir. 2012).

Defendant argues that Governor David Y. Ige, sued in his official capacity, is immune from suit in federal court pursuant to the Eleventh Amendment to the United States Constitution.

State officials who are sued in their official capacities are generally entitled to protection pursuant to the Eleventh Amendment because a suit against a State official in his or her official capacity is essentially a suit against the State as a real party in interest.  Edelman v. Jordan, 415 U.S. 651, 663 (1974).

The United States Supreme Court in Ex Parte Young established an exception to sovereign immunity provided by the Eleventh Amendment to the United States Constitution.  The United States Supreme Court found in Ex Parte Young that a suit against

14

a State official seeking an injunction to prevent the application of an allegedly unconstitutional state law is not deemed against the State, and is not barred by the Eleventh Amendment.  Ex Parte Young, 209 U.S. 123, 159-60 (1908).

The Ex Parte Young exception to Eleventh Amendment immunity applies where a plaintiff alleges an ongoing constitutional violation and where the relief sought is prospective rather than retrospective.  Coeur d'Alene Tribe of Idaho, 521 U.S. at 281.

Here, Plaintiff's Complaint alleges that the Defendant Governor's implementation of Act 103 violates the Contract Clause of the United States Constitution.  Plaintiff seeks prospective declaratory and injunctive relief against the Defendant in his official capacity as Governor of the State of Hawaii.

The Eleventh Amendment does not bar Plaintiff from filing suit against the Defendant Governor based on an ongoing constitutional violation seeking prospective relief.  Coalition to Defend Affirmative Action, 674 F.3d at 1133-34.

The Court must examine if Plaintiff has stated a valid constitutional claim against the Defendant to determine if the Defendant is barred from suit in federal court pursuant to the Eleventh Amendment to the United States Constitution.  Pennhurst, 465 U.S. at 100.

### III. Defendant's Motion for Judgment on the Pleadings (ECF No. 27)

Defendant has filed a Motion for Judgment on the Pleadings arguing that even if the Complaint's allegations are true, Plaintiff has not stated a claim upon which relief may be granted.

Defendant asserts that Act 103 does not violate the Contract Clause of the United States Constitution and does not impair the contracts entered into between the State and the employees covered by Collective Bargaining Agreements in Bargaining Units 1 and 10.

### A.   Act 103 as Codified

Plaintiff's suit concerns the implementation of House Bill 1075, signed into law on June 10, 2015, as Act 103 (2015), and codified in Haw. Rev. Stat. §§ 89-8.5 and 323F-51-60.

**Haw. Rev. Stat. § 89-8.5**

Section 89-8.5 of the Hawaii Revised Statutes is the first statute codified as a result of Act 103.  Haw. Rev. Stat. § 89-8.5 (2015).  Section 89-8.5 sets forth the method by which the Hawaii Health Systems Corporation may negotiate with the unions in order to amend existing collective bargaining agreements and facilitate the transfer of employees to another State position.

16

Section 89-8.5 provides,

**§ 89-8.5 Negotiating authority; Hawaii health systems corporation.**

Notwithstanding any law to the contrary, including section 89-6(d), the Hawaii health systems corporation or any of the regional boards, as a sole employer negotiator, may negotiate with the exclusive representative of any appropriate bargaining unit and execute memorandums of understanding for employees under its control to alter any existing or new collective bargaining agreement on any item or items subject to section 89-9; provided that an alteration that intrudes beyond the jurisdiction of the Hawaii health systems corporation shall be effective only if the employer of the governmental jurisdiction intruded upon consents to the alteration in writing.

Haw. Rev. Stat. § 89-8.5 (2015).

**Haw. Rev. Stat. § 323F-52**

The main provision of Act 103 is codified in Section 323F-52 of the Hawaii Revised Statutes. Section 323F-52 sets forth the process by which the Governor of the State of Hawaii negotiates the transfer of the management and operation of Hawaii Health Systems Corporation's Maui facilities to a private entity. Haw. Rev. Stat. § 323F-52.

Section 323F-52 provides, in relevant part,

**§ 323F-52. Transfer of right and responsibility to manage, operate, and provide health care services in a facility of the Maui regional system to a nonprofit management entity.**

(a) Notwithstanding any other law to the contrary, ..., the governor, with the assistance of the chief executive officer of the corporation, and the regional

17

chief executive officer of the Maui regional system, or their designees, shall negotiate with a private entity to transfer the right and responsibility to manage, operate and otherwise provide health care services at one or more facilities of the Maui regional system, including Maui memorial medical center, Kula hospital and clinic, and Lanai community hospital, to a nonprofit management entity wholly-owned by the private entity; ...

(b) Any agreement negotiated by the governor and entered into by the private entity and the governor, the corporation board, and the Maui regional system board, shall, at a minimum, include a transfer completion date and a plan and schedule for completing the transfer ...

(c) On and after the transfer completion date for the transfer of one or more facilities of the Maui regional system to a private entity or its nonprofit management entity pursuant to this part, the State, the corporation, and the Maui regional system and its board shall cease to have any responsibility for or control over the management and operation of the facility or facilities transferred by the agreement pursuant to this part.

Haw. Rev. Stat. § 323F-52 (2015).

**Haw. Rev. Stat. § 323F-57**

Section 323F-57 of the Hawaii Revised Statutes codifies another important provision from Act 103. Haw. Rev. Stat. § 323F-57 (2015). Section 323F-57 requires the Hawaii Health Systems Corporation and the unions meet to discuss the transfer of employees pursuant to Section 323F-52. Haw. Rev. Stat. § 323F-57(a).

Section 323F-57 further provides that any employment with the private entity who takes over management and control of the

Maui facilities will be private employment and not governed by the laws that apply to public officers and employees of the State of Hawaii. Haw. Rev. Stat. § 323F-57(b).

Section 323F-57 provides, in relevant part,

**§ 323F-57 Employment, wages, and benefits.**

(a) The corporation and the unions representing employees of the facility or facilities shall meet to discuss the impact of a transfer on the employees and the feasibility of tempering the adverse effect of layoffs by amending the employees' collective bargaining agreements pursuant to section 89-8.5.

(b) The employees working at a transferred facility shall be subject to laws and regulations that apply to private sector employees. The employees of a private entity or its nonprofit management entity shall not be governed by state laws that apply to public officers and employees of the State including but not limited to section 76-16(b) and all other sections of chapter 76, chapters 89, 89A, and 89C, and any other laws and regulations that govern public or government employment in the State....

Haw. Rev. Stat. § 323F-57 (2015).

The Parties agree that Act 103 provided for a process by which the transfer of the management and operation of the health care facilities in the Maui Regional System of the Hawaii Health Systems Corporation will be made to a nonprofit, private entity.

Pursuant to Act 103, once the Governor finalizes negotiations with the chosen private entity, the Hawaii Health Systems Corporation would then enter into a contractual and business relationship with that entity. Haw. Rev. Stat. § 323F-52(b).

19

The transfer of Maui Regional System facilities will convert the Hawaii Health Systems Corporation's role from that of an operator of those facilities to that of a landlord. Haw. Rev. Stat. § 323F-54. It will also be a subsidizer of the transferee entity. Haw. Rev. Stat. §§ 323F-58, 323F-59.

Plaintiff argues that Act 103 violates the Contract Clause of the United States Constitution because it interferes with the Collective Bargaining Agreements currently in effect between employees in Bargaining Units 1 and 10 and the Hawaii Health Systems Corporation.

**B.  Plaintiff Has Not Stated a Claim Based on a Violation of the Contract Clause of the United States Constitution**

The Contract Clause of the United States Constitution provides that "No State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. Art. I, §10, cl. 1.

It long has been established that the Contract Clause places limits on the power of States to modify their own contracts as well as to regulate contracts between private parties. United States Trust Co of New York v. New Jersey, 431 U.S. 1, 17 (1977). The Contract Clause has been construed narrowly despite the sweeping terms of the literal text. Matsuda v. City & Cnty. of Honolulu, 512 F.3d 1148, 1152 (9th Cir. 2008). The Ninth Circuit Court of Appeals has found that the Contract Clause is not an

absolute prohibition on any state impairment of a contract and "is not to be read with literal exactness like a mathematical formula." Id. at 21.

The threshold inquiry in evaluating an alleged Contract Clause violation by a State is to determine if the "state law has, in fact, operated as a substantial impairment of a contractual relationship." San Diego Police Officers' Ass'n v. San Diego City Emp. Ret. Sys., 568 F.3d 725, 736-37 (9th Cir. 2009) (quoting Energy Reserves Group, Inc. V. Kan. Power & Light Co., 459 U.S. 400, 411 (1983)).

In this case, the contractual relationship at issue involves two Collective Bargaining Agreements between the State of Hawaii and employees of the Hawaii Health Systems Corporation in Bargaining Units 1 and 10. (Collective Bargaining Agreement for Unit 1, effective July 1, 2013 to June 30, 2017, attached as Ex. 2 to Def.'s Motion for Judgment on the Pleadings, ECF No. 27-6; Collective Bargaining Agreement for Unit 10, effective July 1, 2013 to June 30, 2017, attached as Ex. 3 to Def.'s Motion for Judgment on the Pleadings, ECF No. 27-7). The Court considers the contents of the two Collective Bargaining Agreements as they are incorporated by reference in the Complaint. Lee, 250 F.3d at 688.

The Court must examine the Collective Bargaining Agreements to determine if they are substantially impaired by Act 103.

Univ. of Haw. Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1101-02 (9th Cir. 1999).  An impairment of a public contract is substantial if it deprives a private party of an important right contained in the contract, thwarts performance of an essential term of the contract, defeats the reasonable expectations of the parties in their contractual relationship, or alters a financial term of the contract.  So. Cal. Gas v. City of Santa Ana, 336 F.3d 885, 890 (9th Cir. 2003).

Hawaii and federal courts generally construe collective bargaining agreements using ordinary principles of contract interpretation.  M & G Polymers USA, LLC v. Tackett, 135 S.Ct. 926, 933 (2015); United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc., 149 P.3d 495, 508 (Haw. 2006).  The starting point is the actual terms of the Collective Bargaining Agreements, which must be read in the context of the agreements' "language, structure, and stated purpose."  Alday v. Raytheon Co., 693 F.3d 772, 782 (9th Cir. 2012); Williams v. Aona, 210 P.3d 501, 515 (Haw. 2009).

**1.   The Collective Bargaining Agreements Do Not Guarantee Employment for the Duration of the Agreements**

The Ninth Circuit Court of Appeals has stated that "it is well established that a collective bargaining agreement cannot bind an employer to continue in business."  Wien Air Alaska, Inc.

22

v. Bachner, 865 F.2d 1106, 1112 (9th Cir. 1989).  Employees'
rights pursuant to a collective bargaining agreement do not
survive a discontinuance of business and a termination of
operations.  Garcia v. Hudson Lumber Co., 679 F.Supp. 961, 966
(N.D. Cal. 1987).

   Collective bargaining agreements are not contracts of
employment and "no one has a job by reason of it and no
obligation to any individual ordinarily comes into existence from
it alone."  J.I. Case Co. v. NLRB, 321 U.S. 332, 334-35 (1944).
Rights of employees under a collective bargaining agreement
presuppose an employer-employee relationship.  Fraser v. Magic
Chef-Food Giant Markets, Inc., 324 F.2d 853, 856 (6th Cir. 1963)
(finding that the discontinuation of an employer's plant did not
violate the terms of the collective bargaining agreement because
collective bargaining agreements do not create an employer-
employee relationship nor does it guarantee the continuance of
one).

   Plaintiff argues that the Collective Bargaining Agreements
will be impaired if the State of Hawaii terminates its management
and operations of the Hawaii Health Systems Corporation's Maui
facilities.  Review of the Collective Bargaining Agreements
demonstrates that the State is permitted by the terms of the
Agreements to terminate its management and operation of the
facilities and engage in employer-wide layoffs.

Section 12 of the Collective Bargaining Agreements allows for termination of employees, including an "Employer-Wide Layoff". (Unit 1 CBA at ¶¶ 12.01-12.09, pp. 11-16, ECF No. 27-6; Unit 10 CBA at ¶¶ 12.01-12.09, pp. 11-15, ECF No. 27-7). The Collective Bargaining Agreements explain the reduction-in-force procedures to be followed in such a situation. (Id.) Act 103 does not interfere with any of the Layoff procedures contained in the Collective Bargaining Agreements.

Plaintiff argues that Act 103 impairs its Collective Bargaining Agreements by extinguishing its ability to enforce its bargained-for rights such as wages, hours of work, seniority protections, and fringe benefits. (Pla. Opp. to Def. Motion for Jdgmt. on the Pleadings at p. 14, ECF No. 48).

Plaintiff relies on the Ninth Circuit Court of Appeals' decision in University of Hawaii Professional Assembly v. Cayetano, 183 F.3d 1096, 1102 (9th Cit. 1999). In Cayetano, the State of Hawaii enacted legislation that allowed it to postpone payment to State employees in order to convert its payroll system from a predicted payroll to an after-the-fact payroll system. Id. at 1100. The State had entered into a Collective Bargaining Agreement with University of Hawaii employees which included wage provisions. Id. at 1102. The University employees objected to the State's legislation and sought a preliminary injunction to prevent the State from postponing payments by converting its

24

payroll system, arguing that the legislation interfered with its collective bargaining agreement.  Id.

The district court granted the preliminary injunction and the Ninth Circuit Court of Appeals upheld it.  Id.  The appellate court found that although the collective bargaining agreement did not contain an explicit term as to the timing of the wage payments, "the State and its employees had a course of dealing under which it understood that employees would be paid on the fifteenth and last days of every month."  Id.  The Ninth Circuit Court of Appeals upheld the injunction finding that pay dates were material to the terms of employment and timely payment of wages would be impaired as a result of the State's legislation. Id.

Unlike in Cayetano, this case does not involve a dispute regarding a bargained-for term of employment.  A collective bargaining agreement does not create an employer-employee relationship.  The employees in Bargaining Units 1 and 10 are not guaranteed employment for the existence of the contract.  J.I. Case Co., 321 U.S. at 334-35;  Fraser, 324 F.2d at 856; Wien Air Alaska, Inc., 865 F.2d at 1112.  There can be no course of dealing to provide a contractual expectation that an employee is guaranteed employment for the duration of the Collective Bargaining Agreement.

Nothing in the terms of the Collective Bargaining Agreements

guarantees an employee will be employed for the duration of the contract.  Any such expectation directly conflicts with the Layoff provisions contained in Section 12 of the Collective Bargaining Agreements.  Not only is there no guarantee of employment, there is no express or implicit term that requires the Hawaii Health Systems Corporation to operate any specific facility for the duration of the agreement.  The Collective Bargaining Agreements explicitly contemplate the possibility of an employer-wide layoff as well as layoffs due to a "lack of work, need, or funds."  (Unit 1 Collective Bargaining Agreement at p. 11, ECF No. 27-6; Unit 10 Collective Bargaining Agreement at p. 11, ECF No. 27-7).

Plaintiff's claim that Act 103 impairs a contractual right to be employed for the full term of the Collective Bargaining Agreements is without merit.

### 2.   Act 103 Does Not Impair Any Terms Contained in the Collective Bargaining Agreements

Plaintiff argues that implicit in the Collective Bargaining Agreements is a clause characterized by the Plaintiff as an anti-privatization clause.  The clause is found in the text of Hawaii State Act 262 (1996).  Plaintiff argues that the terms of Act 262 are incorporated into the terms of the Collective Bargaining Agreements pursuant to Section 14.01.

Section 14.01 of the Collective Bargaining Agreements,

entitled "Prior Rights, Benefits and Perquisites," states:

> Nothing in this Agreement shall be construed as
> abridging, amending or waiving any rights, benefits or
> perquisites presently covered by constitutions,
> statutes or rules and regulations that Employees have
> enjoyed heretofore, except as expressly superseded by
> this Agreement.

(Unit 1 Collective Bargaining Agreement at pp. 16-17, ECF

No. 27-6; Unit 10 Collective Bargaining Agreement at p. 17, ECF

No. 27-7).

A plain reading of Section 14.01 demonstrates that it

operates as an internal limitation on the Collective Bargaining

Agreements' implicit effect on external laws and is not an

incorporation clause.  See M & G Polymers USA, LLC, 135 S. Ct. at

933; Cho Mark Oriental Food, Ltd. v. K & K Int'l, 836 P.2d 1057,

1063-64 (Haw. 1992).

Even considering Plaintiff's argument regarding the alleged

incorporation clause in the Collective Bargaining Agreements,

Plaintiff has not demonstrated that Act 103 violates the Contract

Clause.

### a.    Act 103 Does Not Conflict With Act 262

Hawaii Act 262 (1996), codified in Haw. Rev. Stat. § 323F,

established the Hawaii Health Systems Corporation.  Plaintiff

points to Section 323F-7(e) as codified from Hawaii Act 262 in

support of its claim that it contains an anti-privatization

provision that Act 103 impairs.  Section 323F-7(e), provides:

27

The duties and powers granted to the [Hawaii Health Systems Corporation] or any regional system board may not be used to enter into contractual or business relationships that have the practical effect of allowing or are intended to allow private-sector counterparts to replace existing employee positions or responsibilities within the corporation or in any regional system or its facilities; provided the corporation or regional system boards shall be allowed to enter into such relationships to the extent and for the purposes that the division of community hospitals could have done under collective bargaining contracts that were in effect for the 1995-1996 fiscal year.

Haw. Rev. Stat. §323F-7(e).

Plaintiff states that Act 103 violates the Contract Clause because Hawaii Act 262 (1996) does not permit the Hawaii Health Systems Corporation to enter into a privatization transaction. (Pla. Opp. to Def. Motion for Jdgmt. on the Pleadings at p. 14, ECF No. 48).

Contrary to Plaintiff's argument, the Hawaii Supreme Court specifically addressed the text of Act 262 and found that it does not restrict the Hawaii State Legislature's ability to transfer control of a Hawaii Health Systems Corporation facility to a private, non-profit entity. Haw. Gov't Emp, Ass'n, AFSCME, Local 152, AFL-CIO v. Miike 83 P.3d 115, 2004 WL 120523, *3 (Haw. 2004).

In 1996, the Hawaii State Legislature enacted Act 263 (1996), which specifically mandated a transfer of the Hawaii Health Systems Corporation facility, Hana Medical Center, to a private entity. Id. at *1. Act 263 was passed the same year as

28

Act 262, which contains the so-called anti-privatization provision codified in Haw. Rev. Stat. 323F-7(e).

The Hawaii Government Employees Association challenged the privatization of Hana Medical Center in Hawaii state court based on the anti-privatization provision contained in Act 262.  Id. The Hawaii Supreme Court held that the privatization of Hana Medical Center pursuant to Act 263 was permitted and did not conflict with the anti-privatization provision contained in Act 262.  Id.

The Hawaii Supreme Court reviewed the plain language and legislative history of Act 263 to find that the purpose of Act 263 was to transfer Hana Medical Center to a nonprofit organization.  Id. at 3.  The Court found that nothing in Act 262 prohibited the transfer of Hana Medical Center to a nonprofit organization.  Id.  The Hawaii Supreme Court held that Act 262's anti-privatization provision is a limitation on the powers of the Hawaii Health Systems Corporation as an entity, but it does not serve as a restriction on the State Legislature's ability to manage the Hawaii Health Systems Corporation.  Id. at *4.

Just as in Act 263, Act 103 (2015) provides for the transfer of the management and operation of Hawaii Health Systems Corporation facilities to a private, non-profit entity.  Haw. Rev. Stat. § 323F-57(b); 1996 Haw. Sess. L. 263.  There is no irreconcilable conflict between Act 103 and Act 262 and they are

read in pare materia as the Hawaii Legislature intends for both to be given their intended effects.  State v. Batson, 53 P.3d 257, 259 (Haw. 2002).

Just as Act 263 intended to transfer control of the Hana Medical Center to a non-profit entity, Act 103 is a clear expression of the State Legislature's intention that the management and operation of Hawaii Health Systems Corporation facilities on Maui be privatized.  See Miike, 83 P.3d 115 (Haw. 2004).

Plaintiff has not demonstrated that Act 103 conflicts with Act 262 so as to establish an impairment to the Collective Bargaining Agreements entered into with the State.

### b.   Act 103 Does Not Conflict With Chapters 76 and 89 of the Hawaii Revised Statutes

Plaintiff states that Act 103 impairs the Collective Bargaining Agreements by depriving union members of incorporated constitutional and statutory protections concerning (1) the civil service system and the merit principle, as described in Chapter 76 of the Hawaii Revised Statutes; and (2) public employees' collective bargaining rights, as described in Chapter 89 of the Hawaii Revised Statutes.

The Hawaii Supreme Court has recognized that civil service positions are creations of state law.  Miike, 83 P.3d 115, *2 (Haw. 2004).  As creations of state law, civil service positions

30

may be eliminated by the State Legislature without violating Chapters 76 and 89.

The Hawaii Supreme Court held in Naito v. Miike, 81 P.3d 1217, *2 (2004) that the Hawaii State Legislature's power to create a civil service position includes the power to abolish the position, particularly where the purpose of the abolishment is economy or improvement of service to the public.

Plaintiff relies on Konno v. Cnty. of Haw., 937 P.2d 397, 409 (Haw. 1997) in support of its argument.  In Konno, the Hawaii Supreme Court held that the County of Hawaii could not use a state statute intended to finance the construction of garbage-to-energy plants as a means to privatize landfill operations.  937 P.2d at 409-10.  The Court found that governmental entities were not able to privatize civil service positions, "absent clear legislative support for privatization."  Id. at 415; see Miike, 83 P.3d 115 at *2.

Unlike the statute in Konno, Act 103 provides clear legislative support for privatization of civil service positions. See Haw. Rev. Stat. §323F-52.  Upon the transfer of the Hawaii Health Systems Corporation Maui Regional System operations to a private entity, no civil service positions will exist in the transferred facilities.  Haw. Rev. Stat. §323F-57(b).  Act 103 declares that employees of the transferee entity "shall not be governed by state laws that apply to public officers and

31

employees of the State."  Haw. Rev. Stat. §323F-57(b).  The
holding in <u>Konno</u> is not applicable when there is such clear
legislative intent.

Plaintiff has not shown that Act 103 substantially impairs
any of the provisions in the Collective Bargaining Agreements in
effect for Bargaining Units 1 and 10.  Plaintiff's failure to
demonstrate a substantial impairment is fatal to its claims
pursuant to the Contract Clause of the United States
Constitution.  <u>See</u> <u>Cayetano</u>, 183 F.3d at 1101.

There is no valid constitutional claim against the Defendant
Governor.  The Defendant Governor may invoke sovereign immunity
pursuant to the Eleventh Amendment to the United States
Constitution.  The exception to sovereign immunity set forth in
<u>Ex Parte Young</u> does not apply.  The Eleventh Amendment to the
United States Constitution bars Plaintiff's Complaint against
Defendant acting in his official capacity.  <u>Pennhurst</u>, 465 U.S.
at 100.

Defendant's Motion for Judgment on the Pleadings (ECF No.
27) is **GRANTED**.

There are no disputes of material facts and Defendant has
demonstrated that he is entitled to judgment as a matter of law.
Amendment of Plaintiff's Complaint is not permitted as it is
apparent that granting leave to amend would be futile.  <u>Carrico</u>
<u>v. City & Cnty. of S.F.</u>, 656 F.3d 1002, 1008 (9th Cir. 2011); <u>W.</u>

32

<u>Shoshone Nat'l Council v. Molini</u>, 951 F.2d 200, 204 (9th Cir. 1991).

Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE.**

## IV.  Preliminary Injunction

A preliminary injunction may not be issued if the plaintiff does not demonstrate a likelihood of success on the merits, <u>Garcia v. Google, Inc.</u>, 786 F.3d 733, 740 (9th Cir. 2015).

Here, Plaintiff's Complaint fails to state a claim upon which relief may be granted.  A complaint that fails to state a claim leaves the case with no chance of success on the merits, and therefore precludes the issuance of a preliminary injunction. <u>Arc of Cal. v. Douglas</u>, 757 F.3d 975, 993-94 (9th Cir. 2014) (citing <u>E & J Gallo Winery v. Andina Licores S.A.</u>, 446 F.3d 984, 990 (9th Cir. 2006)).

Plaintiff's Motion for a Preliminary Injunction (ECF No. 30) is **DENIED.**

## <u>CONCLUSION</u>

Plaintiff has failed to state a claim based on a violation of the Contract Clause of the United States Constitution. Defendant is entitled to sovereign immunity pursuant to the

Eleventh Amendment of the United States Constitution.

Plaintiff has not shown a likelihood of success on the merits and is not entitled to a preliminary injunction.

Plaintiff's Motion for Preliminary Injunction (ECF No. 30) is **DENIED**.

Defendant's Motion for Judgment on the Pleadings (ECF No. 27) is **GRANTED**.

Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

The Clerk of Court is directed to enter judgment in favor of the Defendant and to **CLOSE THE CASE**.

IT IS SO ORDERED.

DATED:     Honolulu, Hawaii, February 19, 2016.

_____
Helen Gillmor
United States District Judge

United Public Workers, American Federation of State, County, Municipal Employees, Local 646, AFL-CIO v. David Y. Ige, in his capacity as Governor of the State of Hawaii, Civ. No. 15-cv-00303HG-KSC, **ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (ECF No. 30) and GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 27) and DISMISSING PLAINTIFF'S COMPLAINT (ECF No. 1) WITH PREJUDICE**

34